## INJUNCTION.

1 Dec.
633

[Allen Circuit Court, April Term, 1894.]

Moore, Seney and Day, JJ.

### S. W. MOORE v. LIMA NATIONAL BANK.

1. COURTS OF EQUITY ARE GOVERNED BY PRINCIPLES AS WELL DEFINED AS LEGAL PRINCIPLES.

   Rights of parties in a court of equity are determined by equitable principles, quite as certain and well defined as legal principles in a court of law, and it is a misconceived notion that the rights of parties in a court of equity are to be determined by the notions that a chancellor may have as to what is right or just between the parties.

2. APPLICATION FOR INJUNCTION MUST SHOW THAT IRREPARABLE INJURY WILL FOLLOW AND THAT THERE IS NO REMEDY AT LAW.

   Where an agent of stockholders is winding up a bank, and a stockholder entitled to a large dividend has given the bank his note for such agent's accommodation as an individual, taking back the agent's mortgage to hold him harmless, which mortgage the agent has transferred to the bank, so that the agent holds both note and mortgage but threatens to deduct the note from the dividend, and such stockholder brings suit to enjoin this. *Held*, the parties are merely debtor and creditor; each is entitled to a jury trial, one on his claim for a dividend and the other on the note, in which the question can be raised, hence, no irreparable injury is shown. Nor can equity enforce an order for payment of money by a debt, for that would be imprisonment for debt. Hence, injunction must be refused.

APPEAL from the Court of Common Pleas of Allen county.

SENEY, J. (orally.)

The plaintiff filed the following petition in the court below:

"The plaintiff avers that the Lima National Bank is a body corporate under the banking laws of the United States, and that said B. C. Faurot is the agent of said bank, elected by the stockholders thereof, to collect the uncollected assets, to pay any unpaid debts and to wind up the business affairs of said bank, and to pay to the stockholders what may be due them by reason of said stock. That the receiver heretofore appointed for said bank having been discharged by and in accordance with the provisions of said laws, said Faurot succeeded him as agent for said bank."

"The plaintiff further says, he is one of the stockholders of said bank, owning 220 shares therein, of $100 each, and that he is entitled to be paid in liquidation of said stock in an amount equal to any other stockholder, who does not owe said bank—about 75 per cent. of said stock at its face; and that funds are now in the

custody of said agent to disburse and apply on plaintiff's stock as well as that of other holders of stock.

"The plaintiff says that said agent, B. C. Faurot, has in his possession and control as such agent a certain promissory note executed on December 14, 1891, by this plaintiff, payable to said bank, for the sum of $5,000, indorsed by said B. C. Faurot individually, which note became payable on or about March 14, 1892; that while said plaintiff signed said note, it was done solely for the accommodation of said Faurot, he being the real party owing said note to said bank, and that on February 23, 1892, in order to secure this plaintiff from all liability on said note, the said B. C. Faurot and his wife executed and delivered to this plaintiff their mortgage deed of that date, and conditionally conveyed to him certain valuable real estate situate in said county. which is ample in value to secure the payment of said note;. which mortgage was accepted by plaintiff with the full understanding between the plaintiff and said Faurot that said mortgage should be assigned to said bank as securing the payment of said note and relieve plaintiff from payment of any part thereof, and that plaintiff did transfer said mortgage to said bank for that purpose, and for that purpose said bank accepted said mortgage. The said mortgage is the first and best lien on the premises described therein.

"Plaintiff says it is specifically provided in said mortgage that said plaintiff executed said note for the accommodation of said Faurot, and that the liability on said note and for its payment was the liability of said Faurot, and that said note representing said $5,000, and interest thereon at 8 per cent. after maturity, was the debt of said Faurot, and not of said plaintiff, which mortgage is yet in full force.

"The plaintiff further says that said Faurot has become agent for said bank, and came into possession of said note and his own mortgage to said bank; he threatens as such agent to cancel said mortgage and release the same as a lien on his own lands described in said mortgage, and also threatens as such agent to deduct the amount due from said Faurot to said bank on said note and mortgage from the true amount in his custody as such agent and due on this plaintiff's stock, and thus misappropriate said amount due plaintiff on said stock to the satisfaction of the debt of said Faurot to said bank; and that said Faurot, as said agent, will cancel said mortgage and misappropriate said sum of plaintiff's money to wrongful purpose, to-wit: To paying the debt of said Faurot, unless restrained by order of the court.

"Plaintiff avers that all the other property of said Faurot is incumbered by mortgages for its entire value, so that the release of said mortgage held by said bank, will leave said note without any security and do plaintiff great and irreparable injury, for which he has no adequate remedy at law.

"Plaintiff therefore prays for an injunction against said B. C. Faurot, agent of the Lima National Bank, enjoining him from canceling said mortgage until he, as an individual, has paid the same with his own means—and that as such agent he be enjoined from deducting and withholding any amount on account of either said note or mortgage, and for a mandatory injunction ordering said agent to pay to plaintiff the full amount due on his. stock, without any deduction on account of either said note or mortgage, and for general relief in equity.

(Signed)       "J. L. Price,<br>"W. B. Ritchie,<br>"Attorneys for Plaintiff."

Upon the facts stated in this petition application was made to the probate judge of his county for a temporary injunction. This temporary injunction was granted.

Each of the defendants, Faurot individually, Faurot as agent of the bank, and the bank, filed motions to dissolve and temporary injunction, averring in the motions, among other things, that the facts stated in the petition were not sufficient to constitute a cause of action.

This motion was overruled by the court below, and exceptions were taken by the defendants. Answers were filed by each of the defendants. Replies were filed by the plaintiff to each of those answers, and upon the claims made in the respective pleadings, the case was submitted to the court below; and upon a hearing on those pleadings and the evidence, the court decided Faurot from forever releasing the mortgage averred in the petition. It further ordered Faurot to pay the plaintiff a certain sum of money, fifty-four hundred and some odd dollars, as the amount which the court found was due Moore by virtue of the dividends declared upon his stock by the bank.

Notice of appeal was given by each of the defendants. They appealed the case to this court, and the court fixed the amount of the bond at fifteen thousand dollars.

The case in this court was heard upon a motion to vacate the injunction. This motion is treated as a demurrer to the petition, to-wit: That the petition does not state facts sufficient to constitute a cause of action.

The plea that what is honorable, what is right, what is fair between these two parties, may do in morals, but that has no application in a court of equity. The right of parties in a court of law are settled by legal principles. The rights of parties in a court of equity are settled by equitable principles; and it is a misconceived notion that the right of parties in a court of equity are to be determined by the notions that a chancellor may have as to what is right or just between the parties. If this were so, equity might be one thing in Allen county this week before one chancellor, and an entirely different thing next week before another chancellor. The rights of parties in a court of equity are settled by equitable principles certain and well defined—just as certain and well defined as legal principles in a court of law.

This case, in a court of equity in Ohio, and a court of equity only having cognizance on the subject of injunction, is settled by equitable principles, and among those principles are two: Before a party is entitled to an injunction—before a party is entitled to the relief that an injunction would grant, he must present facts in a petition showing that if the act is permitted to be done, he will sustain an irreparable injury; and second, showing a state of facts from which it would appear that he has no adequate remedy at law.

If the petition does show a state of facts that he has an adequate remedy at law, he is not entitled to an injunction, and the court of equity will not take hold of the case, but will remand the party to a court of law.

So, treating this motion to vacate this injunction as a demurrer to the petition on the grounds that it does not state facts sufficient to constitute a cause of action, the question arises then: Does the plaintiff by his petition show facts that, if what he complains of is done, he will sustain irreparable injury, and show a state of facts that has no adequate remedy at law?

True, in the petition is a general averment that if the court does not grant the injunction he will be irreparably injured. This is held by the Supreme Court as of no avail. I read from *Van Wert* v. *Webster et al.*, 31 O. S., 420: "When an injunction is sought upon the ground of apprehended injury to real property, facts must be stated showing that the injury would be irreparable, and the mere statement in the petition that the injury will be irreparable, is sufficient on demurrer." So that the general averment in this petition that the plaintiff will sustain irreparable injury, amounts to nothing, unless the facts pleaded show that he will sustain irreparable injury.

Now, what is the legal effect of the facts? Moore gave his note to the Lima National Bank, and he gave it as an accommodation to Faurot. The bank owns it. The bank holds it, whether it is stamped as accommodation paper or not. After this was done, Faurot (to secure Moore by reason of this note), with his wife executed and delivered a mortgage to Moore, under the agreement with Moore that this mortgage should be his security by virtue of his giving this note

to the bank. Certain conditions were expressed in the mortgage, to-wit: That the note was an accommodation note for Faurot.

Now, then, so far as we have the bank owning the note of Moore. We have Moore owning a mortgage executed by Faurot to protect him against any claim that the bank may make upon the note it holds. The plaintiff then says in his petition that he transferred this security—this mortgage—to the bank under an agreement with the bank that it take the mortgage as a security for the money that had been loaned upon his note, and under an agreement with the bank that his note should be canceled. That was the agreement, as pleaded in the petition between Moore and Faurot; the agreement pleaded in the petition as to how the bank got this mortgage was, it got it by virtue of an agreement that Moore should be released from this note, and that the bank would hold the mortgage security of Faurot instead. Well, now, if that is true, the bank absolutely owns the mortgage, and what power is there in a court of equity to enjoin the bank from doing with its own paper just what it pleases? Stick it in the stove if it wanted to. It is absolutely its paper, said so by the plaintiff in his petition, and admitted by the defendants in this demurrer, that the bank absolutely owns this paper, by virtue of the agreement pleaded by the plaintiff, and the agreement further states that the note was to be canceled. Well, that does not give a court of equity the right to grant this injunction against the bank or the bank's agent—and it must be remembered that Faurot in an individual capacity is entirely different in law from Faurot as agent of this bank; his acts as the agent of the bank are the acts of the bank; the bank is chargeable; the stockholders are chargeable with his acts as agent; and he as an individual is simply charged with his individual acts.

If that is true, I repeat, what power is there in a court of equity to order a party that has the absolute title to property—to a mortgage—that he shall be enjoined from doing with the property just what he pleases? Why, simply none.

Now, it may be claimed that there is something in the petition to show that Moore will be injured, because he took this mortgage as security to protect himself in the signing of this note upon which Faurot got the money, as an accommodation to Faurot, and hence it is not true that the bank got it by an agreement making it absolutely theirs, but, in, fact, took it under similar arrangements to what Moore had, to-wit: It held it as security for Moore's note. The condition expressed in the mortgage is that the note was an accommodation, and that this mortgage is given to protect Moore by reason of Moore giving the note to the bank, and that the bank should hold that security that Moore held to protect his signature on that note. Although the pleadings do not show any such state of facts, we might read between the lines and infer this. But what of that? What will that show? Why, the bank has got Moore's note rightfully. The bank has got Faurot's mortgage rightfully. As between the bank and Moore, the bank could not destroy the security. If it did, to the extent of the value o the security Moore's note would be paid. That is the effect of this. In other words, the bank, holding Moore's note, holds the mortgage of Faurot as collateral security. Having that as collateral security, they must protect Moore, and in the protection of Moore, they can do nothing with the collateral that will diminish it in value. So that, if the bank, as charged in this petition, by its agent, is going to release this mortgage and thus destroy the collateral security, to the extent of the value of the property released, Moore's note would be paid. So he would not be injured in that respect. He would not sustain irreparable injury in that regard.

In neither aspect of the case, that it is a contract whereby the bank becomes the absolute owner of the mortgage and being the absolute owner can do with its own property as it pleases; or in the aspect that it is held by the bank as collateral security for this note, in neither event can Moore sustain any injury by any act that the bank may do through its agent or through itself with this mortgage paper. So, upon this state of facts it is not shown, it is not begun to be shown,

that Moore, by the claimed acts of this bank, through its agent, will sustain any injury at all.

We now go to the next question, and all that is left of the case. So much money is coming to Moore on account of the dividend declared by the bank, and this bank won't pay it, and unless they are restrained they are going to apply it in payment of Moore's note. Well, what if they do? What if the bank does apply it? It don't pay the note, or it don't pay the dividends to Moore unless they had the right to apply it. Suppose we enjoin them from applying these dividends on stock to pay this note? That will not bring Moore his money. A mere naked injunction to restrain the bank from applying it upon this note will not bring Moore his money; and the effect of it will not be a bar to the bank suing Moore upon its note. So it would be just idle. Now, I repeat, they want the bank enjoined from applying the amount that is due Moore to the payment of this note. Suppose they get it. Suppose the court would do just what they ask in that respect, of what avail would it be? It would simply amount to nothing; and as I repeat, that would not be a bar, either to sue the bank for his dividend, or to the bank to sue Moore upon his note. It is so held in the case of *Cramer v. Moore*, 36 O. S., 347. It reads: "In an action on a promissory note the maker is not estopped from setting up want of consideration or fraud, by a judgment dismissing his petition on the merits, in an action brought to enjoin the negotiation of the note and to obtain its surrender and cancellation, although the matter set up as a defense was relied on as the ground of relief in the petition."

Also reading from the citation on page 350: "A decree dismissing a bill upon the merits, does not establish any new right to be carried into effect; it only declares that the plaintiff has failed to establish the equity which he had set up. It is laid down that the dismissal of a bill seeking equitable relief in respect to an instrument on which a party can sue at law, is no bar to an action at law upon the same instrument, although the decree does not state the dismissal to have been without prejudice. It seems to be well settled that in case of bills for the specific performance of agreements, although the bill be dismissed without any reservation of the plaintiff's rights to proceed at law, he may sue at law on the agreement.

"The only effect, therefore, in our opinion, of the dismissal of the petition, was to declare that the plaintiff had no equitable right to maintain the action; and that the rights of the parties remained the same as if no action had been brought, or injunction allowed, save only that the dismissal was a bar to the bringing of another action for the same matter."

So, if we would grant the injunction we would not settle anything. Moore would not have his money that is due him as a dividend; and the bank would still hold the note.

Well, now what else? We have seen that to restrain him from making this application amounts to nothing. They want an order as against Faurot, the agent of this bank—or, in other words, they want an order requiring this bank to pay Moore the amount that is due him as dividends. In the first place, the bank under the law, has the right to contest whether there is any dividend due Moore, in an action at law. It has the right to a trial by jury. A party by filing a petition in a court of equity seeking that, cannot deprive him of his right to a trial by jury.

In the next place, suppose the court orders the bank to pay Moore the amount of his dividend; how are we going to enforce it? We make the order, and order the bank to pay Moore the amount of his dividend. The relation existing between Moore and the bank in that respect is the relation of debtor and creditor; nothing more or nothing less. We make an order as a court of equity requiring Faurot to pay Moore the amount of his dividend; how are we going to enforce it? Well, we can't. We can make the order. That would not get Moore his money.

Ah! but it can be said the court can enforce it. If they don't obey the order, contempt of court. But when you come to enforce a debt, that is the subject of an action at law. If done by a court of equity by contempt, you are imprisoning a man for debt, in violation of the constitution of the state, in the absence of fraud. If the court should order that he pay it, 'and upon his failure to pay, arrest him for contempt, and send him to jail until he does pay it, it is in effect the putting of a party in jail for debt, in direct violation of the constitution of the state.

So, how would we enforce it? How would a court of equity enforce this order? It cannot.

So, it is nowhere shown, in all the averments of the petition affecting the question, that by any act that it is claimed that this bank will do, that Moore will sustain irreparable injury.

As I have said, has he an adequate remedy at law? His complaint is, first, to protect his note; and second to get his dividend. He can't be injured upon the note, as we have seen, unless they get a judgment against him. If the bank sues him upon his note, he could make the defense he has attempted to make in a court of equity. Hence, he has a remedy at law.

To get his dividend from the bank, if the bank refuses to pay like any other debtor or creditor the only way a party can get it is by suing in an action at law.

If the bank does not pay Moore the dividends that are due him upon his stock, his right is to sue the bank to compel it to pay his dividends upon the stock, and thus get a judgment against it that can be enforced and bring the money. If he should sue it for the dividends due upon his stock, the same question that is attempted to be made in the court of equity could be raised by answer by the bank.

So for both remedies he seeks, both rights that he seeks to maintain by this petition, are rights that are not cognizable in a court of equity, but are rights cognizable only in a court of law, where each party has a right to a trial by jury.

So upon both of these grounds, that the petition does not show a state of facts that Moore will sustain irreparable injury, and does show that he has an adequate remedy at law, the demurrer to the petition should be sustained.

Another thing has occurred to me in the case: the party was enjoined from canceling the mortgage, and he was ordered to pay over this money to Moore. The effect of the appeal was to suspend the order, but it left the bank powerless to do anything with the securities or with the money until the final disposition of the case; so that the only injury or the loss that could possibly be sustained by Moore by the appeal, if the appellate court sustained the action of the court below, would be the costs of the action and the interest on the dividend, probably in the neighborhood of three hundred dollars. The bank's or the defendant's right to appeal is granted by statute. True, the court has the power to fix the amount of the appeal bond; but in this case, where, upon the face of the record, it shows that a three-hundred-dollar bond would cover the loss if the court below was sustained, it looks indeed strange to me that the bond should be fixed at fifteen thousand dollars. It looks simply to me like an attempt to deny the party the right of appeal.

The majority of the court think that there is not a line in this petition cognizable in a court of equity. The demurrer to the petition will be sustained. Leave will be granted to the plaintiff to file amended petition by May 26, and for the defendants to plead thereto by June 30, and the cause continued.

MOORE, J. concurs; DAY, J., dissents.

*W. B. Ritchie* and *J. L. Price*, for Moore.

*Cable & Parmenter*, for defendants.